# Richmond.

ROBERT BROWN v. COMMONWEALTH.

March 19, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Hudgins, JJ.

The opinion states the case.

*Buford & Raney,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

Epes, J., delivered the opinion of the court.

Robert Brown is a negro man residing in Brunswick county, at a place remote from the town of Lawrenceville. On Friday, March 21, 1930, while engaged in driving a logging team for J. H. Taylor, a white man, one of the horses stepped into a stump hole and was injured. Brown sent a boy to tell Taylor of the accident. When Taylor came he became very angry, told Brown that he would have to pay for the horse, cursed him, drew a knife on him, and said to him: "I'm going to kill you if it's the last thing I do."

Brown fled, and Taylor pursued him, with a drawn knife, a distance of about one hundred yards.

Brown and the members of his family feared that Taylor would do him some violence, and on the next morning he went with his father to Lawrenceville to consult the Commonwealth's attorney as to what he should do to protect himself against violence from Taylor. The Commonwealth's attorney advised him to swear out a peace warrant against Taylor, and also that if he were attacked by Taylor he had the right to defend himself.

On the same day of the accident Taylor swore out a warrant against Brown, charging him with unlawfully and feloniously injuring, maiming, mutilating and killing his horse. This warrant was delivered to T. L. Stanley, a policeman doing duty as night watchman for the town of Lawrenceville, who also held the office of constable of Brunswick county.

On Sunday morning, March 23, 1930, Stanley, accompanied by R. E. Williams and E. H. Wesson, went to the house of Robert Brown to arrest Brown, in accordance with the mandate of said warrant. They went in an automobile in which they had another negro whom Stanley had arrested. All three were armed. Stanley was armed with two pistols on his person and had in his automobile a repeating shotgun loaded with buck shot. When they arrived, Brown's wife and other members of his family were up and around the yard. The conduct of these men was not such as is proper on the part of officers

of the law, and caused great excitement and alarm among the members of Brown's household.

Brown himself was in his house asleep when the officers arrived. After much excitement had taken place in the yard, his wife went into the house and told him that there was a car-load of men in the yard. In a few minutes Brown came into the hallway, where he could be seen through the open front door, with a loaded gun in his hand. His wife and children were standing in the hallway with him, the children or some of them being between him and the front door. According to the testimony of the officers, Brown made a movement as if to raise the muzzle of the gun above the children's heads. Where-upon Stanley raised his shotgun, and with his gun at his hip, was about to shoot Brown when a member of the family knocked Stanley's gun down, and Brown's wife shoved his gun down.

Brown then went back into the house and soon afterwards came out and peaceably surrendered himself to the officers. The following day he was tried and acquitted of the charge contained in the warrant upon which he was arrested.

Brown testifies that he thought Taylor and some of his associates had come to do him harm; that he came to the door with his gun to protect himself against them; that he did not then know that Stanley, or those associated with him, were officers, and did not know this until after Stanley's gun had been knocked down, when he saw the other negro handcuffed in the car and realized that they must be officers.

The warrant was not read to Brown or any member of his family, though the officers testify that they told Brown's wife that they were officers of the law; had a warrant for him, and had come to arrest him. The evidence is insufficient to show that Brown was told, or knew, or ought to have known, that Stanley had a warrant for him, or that Stanley and his associates were officers of the law.

Brown was indicted and tried for wilfully and feloniously

making an assault on T. L. Stanley with intent to murder him. The jury returned a verdict: "We, the jury, find the accused, Robert Brown, guilty of an assault, as charged in the within indictment, and ascertain his punishment to be confinement in jail for the term of six months and a fine of $200.00." The court entered judgment, sentencing Brown in accordance with this verdict.

The plaintiff in error makes eleven assignments of error, but, in the view which we take of this case, it is only necessary to consider two of them:

(1) That the court erred in permitting Edwards, Barrow, Collier and Jones to serve as members of the jury; and

(2) That the court erred in refusing to set aside the verdict of the jury because contrary to the evidence.

Section 5986, Virginia Code, 1919, as amended, provides that the judge of the circuit court "shall, prior to the fifteenth day of February in each year, and as soon thereafter as practical, appoint for the next ensuing year, ending on the following fifteenth day of February," jury commissioners. Sections 5988 and 5989 provide that the jury commissioners so appointed "shall, as soon as may be after their appointment," prepare a list of not less than one hundred nor more than 300 jurors, and deliver such list to the clerk, and shall cause all the names on such list to be written on separate pieces of paper and placed in the jury box. Section 5992 provides that jurors shall be selected by drawing their names from the names so placed in the jury box.

Section 5995 provides as follows:

"No person who has actually served as a petit juror at any one term of court shall be permitted to serve as a petit juror, or a juror in any criminal case, at any other term of that court during the same year, unless all the persons whose names are in the jury box have been drawn to serve during such year, but no exception to any such juror on this ground shall be allowed after he is sworn. If, however, exception be duly made, and

such person is permitted to serve in contravention of this section, it shall of itself constitute reversible error."

The trial of this case took place in May, 1930, after the jury list for the year ending February 15, 1931, had been prepared and the names thereon placed in the jury box in accordance with sections 5986-5990. Included among the names so placed in the jury box were the names of the four jurors above mentioned. These four gentlemen had served as petit jurors during the latter half of the calendar year 1929, but had not served during the year 1930.

The plaintiff objected to the four jurors mentioned because they had served within one year of the time of the trial. The court overruled the objection and permitted them to serve.

The question is: Do the words "the same year," in section 5995, refer to the year ending February 15th for which the jury list is made up, or do they mean that no person shall be allowed to serve as a juror at any term during the period of one year next succeeding his service as a juror?

The ruling of the trial court was that "the same year" referred to the period for which the jury list is required to be made up, which we may call the *jury year*. This ruling was correct. A person who has served as juror is not, by section 5995, rendered ineligible for service as a juror for a period of one year thereafter. He is only ineligible if he has served at a term of court falling within the period for which the jury list, on which his name has been placed, was made up, and then only in case all other names have not been drawn from the jury box.

The second assignment of error above mentioned is, we think, well made. To review the evidence in this case at length would accomplish no useful purpose, and we shall not do so. In our opinion, the evidence is insufficient to prove, beyond a reasonable doubt, that the plaintiff in error was guilty of the crime charged or any other crime of which he might be con-

victed under said indictment; and the court erred in not setting aside the verdict as contrary to the evidence.

As the Commonwealth evidently has fully developed its case in the trial which has been had, we think the ends of justice will best be served by a dismissal of the indictment. The judgment of the trial court will be reversed, the verdict of the jury set aside, and the case remanded with the direction to the trial court to discharge Robert Brown from further prosecution under this indictment.

*Reversed.*